**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-10147
(Summary Calendar)

HELEN A. BARRICKS,

Plaintiff-Appellant,

versus

MINYARD FOOD STORES, INC.,

Defendant-Appellee.

Appeal from United States District Court
for the Northern District of Texas
(USDC No. 96-CV-2910)

January 29, 1999

Before KING, Chief Judge, BARKSDALE and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge.[*]

Helen A. Barricks ("Barricks") is a former checker for Minyard Food Stores, Inc. ("Minyard") who developed carpal tunnel syndrome and, after two surgeries, was ordered by her physician not to continue her job as a checker. The doctor also restricted Barricks in her ability to perform tasks requiring repetitive motion and to lift weight greater than three pounds. Given that the work of a checker involves exactly these proscribed activities, Minyard attempted to place Barricks in a variety of other positions. These positions ultimately did not suit Barricks' capabilities, and she was subsequently placed on a medical leave of absence by Minyard. Since Minyard and Barricks, working together, were unable to locate a vacant position for her within the company that was consistent with

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

her qualifications and medical restrictions, Barricks sought other employment and eventually obtained a different job, whereupon she resigned her employment with Minyard.

Some time later, Barricks instituted this civil action, alleging that Minyard had discriminated against her in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. § 12101 *et seq.* (West 1995) and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LABOR CODE ANN. 21.001 *et seq.* (West 1996). She also alleged various tort causes of action under Texas law. The district court granted summary judgment to Minyard on each of Barricks' claims. We reject Barricks' claim that the grant of summary judgment was improvident and thus affirm the judgment of the district court.

## BACKGROUND AND PROCEDURAL HISTORY

Barricks began her employment with Minyard, which operates a chain of grocery stores in central Texas, in March 1993. She became a full-time checker in May 1994. During that same month, Barricks began to feel pain in her wrists and elbows. When the pain became worse, Barricks was referred by her primary care physician to a neurologist, who diagnosed her as suffering from carpal tunnel syndrome. Barricks immediately informed Minyard of her condition. Minyard, which is a nonsubscriber to the Texas workers' compensation insurance system, has in place its own program to provide for the payment of medical and wage replacement benefits to employee participants who incur job-related injuries. The administrator of the program agreed that Barricks was entitled to coverage under the program and, in April 1995, referred her to Minyard's physician, Dr. Harry Orenstein ("Orenstein"). Orenstein recommended surgery for Barricks and told her that she would probably never fully recover from carpal tunnel syndrome. Orenstein performed two wrist surgeries on Barricks, in April and May 1995.

Shortly after the surgery, Barricks returned to work, and, in June 1995, Orenstein certified that Barricks had reached maximum medical improvement and instructed Minyard that she not be given any work that required repetitive motion with her hands, arms, and elbows and that she not lift anything over three pounds. As a result, Minyard assigned Barricks to temporary light duty projects

2

such as straightening and cleaning the shelves, pulling stock forward, and performing light checking. Within a few days, however, Barricks had returned to Orenstein complaining of additional pain in her hands and wrists; Orenstein diagnosed her with "overuse syndrome" and ordered that Barricks do no more checking.

Just before this relapse occurred, and subsequent to it, Minyard began looking for job reassignments, both within Barricks' current store and in other Minyard stores, for which Barricks was qualified and that were consistent with the medical restrictions. The opportunities for reassignment were limited because most manual labor jobs in the grocery involved violating one or both of Orenstein's restrictions.[1] In addition, Barricks was limited because transportation exigencies forced her to work at a store that was accessible by bus or on foot.

After her relapse, between July and November 1995, Minyard reassigned Barricks to the position of bakery clerk and later to that of deli clerk within her current store, and offered her the positions of service dispatcher at Minyard's headquarters and bakery clerk at a different store. Barricks could not perform the jobs of bakery clerk and deli clerk due to her disability, and she refused reassignment to the service dispatcher position because of its hours and to the second bakery clerk position due to transportation difficulties and her fear that she would not be able to perform those duties.[2] Minyard also considered several other positions—pharmacy technician, cake decorator, and billing clerk—either at its own initiative or at Barricks' request. Minyard found that Barricks could not perform the responsibilities of any of these jobs due to her disability.

Barricks contends that she should have been considered for a position at the customer service center in her original store. Minyard provides ample evidence that there was no position of customer service representative; the position was filled on a rotating basis by management, and, to the extent

---

[1] Barricks' skills, experience, training, and work history did not qualify her for any supervisory or management positions.

[2] It is mystifying why Minyard believed that Barricks would be able to perform the job of bakery clerk when it became available the second time since Minyard observed that her disability prohibited her from performing the tasks associated with bakery clerk when she was reassigned to that positions a mere three months earlier.

that a checker was ever asked to work behind the customer service counter, such a request was considered a promotion.

During the continuing search for a suitable position—which Minyard admits it believed would prove fruitless—Barricks was granted a medical leave of absence. Minyard even told Barricks that she could claim unemployment benefits during her leave of absence because it doubted that it would be able to accommodate her. In August 1995, Barricks filed for and received benefits. In September 1995, Barricks filed a charge of discrimination with the Texas Commission on Human Rights, alleging that she had been discriminated against when Minyard placed her on a medical leave of absence. Significantly, however, Minyard never terminated Barricks or told her that she was fired; nonetheless, Minyard pursued other employment opportunities, and was hired as a greeter by Pep Boys in October 1995. She informed Minyard that it need no longer seek alternative employment for her, and she completed her separation notice from Minyard in November 1995.

In early 1996, Barricks resigned her employment at Pep Boys and, in September 1996, applied for Social Security benefits, representing that she was totally disabled and unable to work. In November 1996, Barricks again swore that she was totally disabled and unable to work. She was represented by counsel throughout the Social Security proceedings.[3]

In October 1996, Barricks filed the complaint in this case. She pursued six causes of action[4] but alleged only that she was placed on an involuntary leave of absence, not that she was discharged or even constructively discharged. Minyard moved to dismiss the action, and the district court denied the motion. Minyard then answered the charges, denying the allegations. At the close of discovery, in October 1997, Minyard moved for summary judgment. The district court heard arguments on the

---

[3] While still employed at Minyard, Barricks applied for private disability insurance benefits through policies provided by Minyard. In August 1995, Barricks represented to the insurance carrier that she had been totally disabled since July. The insurance company paid her a nominal settlement as satisfaction of her claim to disability benefits.

[4] The causes of action that Barricks alleged were (1) disability discrimination under the ADA; (2) disability discriminiation under TCHRA; (3) unlawful retaliation in violation of the Texas Workers' Compensation Act; (4) intentional infliction of emotional distress; (5) negligence; and (6) grossly negligent infliction of emotional distress.

motion in January 1998 and subsequently granted it, entering final judgment in favor of Minyard. This appeal followed.

**DISCUSSION**

I.     *Standard of Review*

We exercise de novo review of the grant of a summary judgment. See J&B Entertainment, Inc. v. City of Jackson, 152 F.3d 362, 365 (5th Cir. 1998). Summary judgment shall be entered in favor of the moving party if the record, taken as a whole, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" where a reasonable jury could return a verdict for the nonmoving party. See Crowe v. Henry, 115 F.3d 294, 296 (5th Cir. 1997). If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 597 (1986).

II.     *The ADA Component of the Complaint*

In the case at bar, Barricks's statutory cause of action under the ADA fails because Barricks cannot establish that she is a qualified individual with a disability. Title I of the ADA prohibits employment discrimination against only those *qualified* individuals with disabilities who are adversely treated because of their disabilities. See 42 U.S.C.A. § 12112(a). To establish a *prima facie* case of discrimination under the ADA, Barricks must show that (1) she suffers from a disability; (2) she is qualified for the job that she held or sought; (3) she was subject to an adverse employment action; and (4) she was replaced by a non-disabled person or was treated less favorably than non-disabled employees. See Daigle v. Liberty Life Ins. Co., 70 F.3d 394, 396 (5th Cir. 1995). If the plaintiff establishes this *prima facie* case, then the employer must present evidence of a legitimate nondiscriminatory reason for its actions. See id. If the employer presents evidence of a legitimate nondiscriminatory reason for its actions, then the inference raised by the *prima facie* case falls away, and the plaintiff is charged with demonstrating that the employer's articulated reason was a pretext for unlawful discrimination. See Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir. 1996) (en banc) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993)).

6

Barricks has not even come close to establishing the *prima facie* case, much less to demonstrating that Minyard's explanation for its actions was pretextual. Barricks is simply not a qualified individual with a disability. Under the ADA, a "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8). In determining whether Barricks is a qualified individual with a disability, we consider whether she can perform the essential functions of her job and, if not, whether the employer could make any reasonable accommodation that would enable Barricks to perform those tasks. See Rogers v. International Marine Terminals, Inc., 87 F.3d 755, 759 (5th Cir. 1996).

Reasonable accommodations include modifications to an existing job or reassignment to a vacant position but do not include creating a vacancy or a new job. See 42 U.S.C.A. § 12111(9); see also McAlpin v. National Semiconductor Corp., 921 F. Supp. 1518, 1525 (N.D. Tex. 1996) ("[An] employer has no duty whatsoever to create a new job out of whole cloth, or to create a vacancy by transferring another employee out of his job.") Minyard was under no statutory obligation to accommodate Barricks by creating or maintaining "light duty" jobs for her around the store. See Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1094 (5th Cir. 1996). Minyard also had no duty to place Barricks behind the customer service counter simply to accommodate her. The position of "customer service representative" did not exist, and Minyard was not required to create it. Even had Minyard had the duty to create the position, there is no evidence that Barricks would actually have been qualified to hold it.

Barricks simply offers no evidence that she could perform the essential functions of her job. Indeed, Minyard did attempt to accommodate Barricks by reducing her checker responsibilities and by relocating her to other vacant positions within the store. At each turn, however, Barricks either demonstrated that she was not qualified to handle the new position by reason of her disability, or she refused the offers that Minyard made to reassign her. The evidence before the district court leads ineluctably to the conclusion that Minyard attempted to accommodate Barricks as best it could:

7

Minyard gave Barricks other assignments within the store and did her the favor of placing her on a medical leave of absence in order that she might seek other positions. Barricks seems to ignore the fact that she must not only prove qualification to work at a particular post notwithstanding her disability, she must prove qualification for that position given her work history and capabilities: Barricks worked her entire life at entry-level manual labor positions and was not qualified (in the broader sense of that term) for management-level or other skilled positions that, while they would have reduced the physical toll on her wrists and elbows, would have exceeded her other capabilities. Minyard most certainly was not required to place her in any such position.

Barricks was also not subjected to an adverse employment action because of her disability. Cf. Daigle, 70 F.3d at 396. The adverse action of which she complains was that she was placed on an involuntary medical leave of absence. It is clear, however, that this action by Minyard does not suffice to establish a claim of disability discrimination. The leave of absence is best characterized as a *benefit* to employees to prevent their being terminated; that Barricks represents the leave of absence to be adverse and a punishment is irrelevant. The Family and Medical Leave Act provides for just such an action to avoid adverse employment decisions such as discharge. See 29 U.S.C.A. § 2601 (West 1997). Consequently, the medical leave of absence in this case was not an "ultimate employment decision" but an intermediate one designed to benefit Barricks. Cf. Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995). She remained on the leave of absence until she resigned to accept a new position with Pep Boys. Barricks has at no time attempted to prove that she was discharged, nor could she do so.[5]

III.    *The TCHRA Component of the Complaint*

Barricks's cause of action under TCHRA also fails because she cannot make the case that she is "otherwise qualified" under the Act. TCHRA provides that it is unlawful for an employer to

---

[5] Because Barricks failed to make the *prima facie* case in at least two respects, we need not consider whether she could have rebutted any explanation by Minyard, but we note in passing that she offers no evidence that Minyard's explanation for placing Barricks on a medical leave of absence was pretextual.

discriminate against an employee because of a disability, but the Act limits the term "because of disability" by stating that it "applies only to discrimination because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job." TEX. LABOR CODE ANN. § 21.105 (West 1996). To maintain a cause of action under TCHRA, a plaintiff must establish essentially the same elements of proof as if proceedings under the ADA. See, e.g., McIntyre v. Kroger Co., 863 F. Supp. 355, 357-58 (N.D. Tex. 1994) (describing the elements of such a cause of action to be that (1) the individual is a disabled person; (2) the individual was discriminated against because of the disability; and (3) the decision to terminate the individual was based solely on the disability); Holt v. Lone Star Gas Co., 921 S.W.2d 301, 304 (Tex. App. 1996, no writ) (providing for recourse to federal precedent when interpreting TCHRA).

Barricks has not demonstrated "that she is 'otherwise qualified' for the position from which she was excluded." Austin State Hosp. v. Kitchen, 903 S.W.2d 83, 91 (Tex. App. 1995, no writ). In order to establish that she was "otherwise qualified," Barricks needed to prove that (1) she can perform all essential job functions without modifications or accommodations, or (2) some reasonable accommodation by Minyard would enable her to perform her job. See id. (citing 29 C.F.R. § 1613.702(f)). Barricks had the burden of proving that an accommodation existed "that would enable her to perform the 'essential functions' of the position she holds or seeks." Id. at 92. As with her claims under the ADA, Barricks fell woefully short of carrying this burden and thus failed to establish a claim under TCHRA.[6]

III.    *The Workers' Compensation Claim*

Minyard is a nonsubscriber to the Texas Workers' Compensation Act, TEX. LABOR CODE § 451.001 (West 1996), relying instead on an in-house workers' compensation program. As such,

---

[6] We also note that Barricks apparently failed to tender a complaint with the Texas Commission on Human Rights, as she was required to do under TCHRA. See Vincent v. West Texas State Univ., 895 S.W.2d 469, 473 (Tex. App. 1995, no writ) (citing TCHRA §§ 21.201(a) and 21.202(a)). Since there is no evidence that she *did not* seek a right to sue under TCHRA, we decline to hold that her claim here is procedurally barred, particularly since it fails under an analysis of the statutory preconditions to a successful action.

Minyard cannot be sued for alleged acts of discrimination that violate the Workers' Compensation Act. See Texas Mexican Ry. Co. v. Bouchet, 963 S.W.2d 52, 55 (Tex. 1998). In addition, Barricks did not even file a workers' compensation claim or otherwise seek relief under the Act; these failures also preclude her present claim. See id. Even if Barricks could pursue this cause of action, we find that Minyard did not retaliate against her, and she offers no evidence that Minyard demonstrated an unlawful motive due to her report of an injury.

IV.     *The State Law Claims*

Contrary to Barricks's protestations, the district court properly exercised supplemental jurisdiction over her state law tort claims because Barricks's claims all rose from a common nucleus of operative facts. See 28 U.S.C. § 1367 (1998); see also Sigmon v. Southwest Airlines Co., 110 F.3d 1200, 1203 (5th Cir.), cert. denied, 118 S. Ct. 370 (1997) (noting district courts' discretion to exercise supplemental jurisdiction in cases such as this one).

We agree with the district court that Barricks failed to establish a case of intentional infliction of emotional distress. In order to prove this tort claim, Barricks must demonstrate that Minyard (1) acted intentionally or recklessly; (2) exhibited conduct that was extreme and outrageous; (3) engaged in actions causing Barricks emotional distress; and (4) engaged in actions leading to emotional distress of a severe nature. See Cantu v. Rocha, 77 F.3d 795, 810 (5th Cir. 1996). Barricks presented no evidence before the district court that Minyard's actions were extreme or outrageous or that she suffered severe emotional distress.

Similarly, Barricks has not demonstrated that Minyard was negligent in causing the onset of her carpal tunnel syndrome. She testified in her deposition that the store was not an unsafe place to work and that she was unaware of what might have caused her to develop carpal tunnel syndrome. As a result, she has failed to prove negligence on the part of Minyard: she alleges no breach of duty or damages proximately resulting from the breach. See Werner v. Colwell, 909 S.W.2d 866, 869 (Tex. 1995).

10

Finally, no cause of action exists for the negligent (or grossly negligent) infliction of emotional distress in Texas. See Boyles v. Kerr, 855 S.W.2d 593, 594 (Tex. 1993). We decline to establish such a cause of action; even if we were so inclined, Barricks's claim would fail given her inability to prove that Minyard was negligent in the first place.

## CONCLUSION

Even drawing inferences from the facts in this case in the light most favorable to Barricks, we are forced to conclude that Barricks has not presented evidence to make a *prima facie* case of discrimination under the ADA or TCHRA, nor has she established the elements necessary to carry a claim under Texas tort law. No reasonable jury could find otherwise, and, thus, summary judgment was appropriately entered. In addition, we are able to decide this case without recourse to our opinion in Cleveland v. Policy Management Sys. Corp., 120 F.3d 513, 517 (5th Cir. 1997), a decision on which the Supreme Court has granted certiorari.[7] See 119 S. Ct. 39 (U.S. Oct. 5, 1998) (No. 97-1008). We therefore DENY Barricks's request for a stay of these proceedings and AFFIRM the judgment of the district court.

The decision of the district court is Affirmed and Appellant's request for a stay of the proceedings is Denied.

---

[7] In Cleveland, we held that judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position taken in an earlier proceeding, to wit that a person alleging "total disability" in a Social Security application may not later file a claim under the ADA in which he or she alleges wrongful termination. See 120 F.3d at 514. We held in Cleveland that an application for social security benefits "creates a rebuttable presumption that [the applicant] is judicially estopped from asserting that [she] is a 'qualified individual with a disability.'" Id. at 518. We observed that overcoming that presumption is difficult and that it would take a highly unusual set of circumstances for the two claims not to be mutually exclusive. See id. at 517.

The Supreme Court has granted certiorari on this issue. While Cleveland remains the law of the circuit until such time as the Court may elect to overrule it, see Wicker v. McCotter, 798 F.2d 155, 158 (5th Cir. 1986), we would be inclined to defer to the Court and to grant Barricks's motion for a stay of these proceedings if the case actually turned on this question. As we demonstrate above, however, Barricks has not provided adequat e evidence that she is a qualified individual with a disability and thus we decide the case without recourse to the estoppel issue raised by Cleveland.